UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
BRICKMAN INVESTMENTS INC., On     :     Civil Action No. 07-4719
Behalf of Itself and All Others Similarly     :
Situated,     :     <u>CLASS ACTION</u>
    :
            Plaintiff,     :     COMPLAINT FOR VIOLATION OF THE
    :     FEDERAL SECURITIES LAWS
        vs.     :
    :
XINHUA FINANCE MEDIA LIMITED,     :
FREDY BUSH, SHELLY SINGHAL, J.P.     :
MORGAN SECURITIES INC., UBS AG,     :
CIBC WORLD MARKETS CORP. and WR     :
HAMBRECHT + CO., LLC,     :
    :
            Defendants.     :
———————————————————— x     <u>DEMAND FOR JURY TRIAL</u>

## NATURE OF THE ACTION

1.      This is a class action on behalf of all persons or entities who acquired American Depositary Shares ("ADSs") of Xinhua Finance Media Limited ("Xinhua" or the "Company") pursuant to the Company's false and misleading Registration Statement and Prospectus (collectively, the "Registration Statement") issued in connection with its March 8, 2007 initial public offering ("IPO"), seeking to pursue remedies under the Securities Act of 1933 ("1933 Act").

2.      Xinhua is a diversified media company in China. The Company has developed an integrated platform that includes the creation and production of content that is distributed across nationwide television and print media outlets, and radio in Beijing and Shanghai.

3.      On March 9, 2007, Xinhua accomplished its IPO of 23.07 million ADSs, representing 46.15 million common shares, at $13.00 per ADS (including 1.5 million shares sold by Xinhua's Chairman and Chief Executive Officer ("CEO"), Fredy Bush ("Bush")) for net proceeds of $300 million, pursuant to the Registration Statement.  The Registration Statement failed to disclose that Xinhua's Chief Financial Officer ("CFO") was simultaneously the Company's CFO and an investment banker and stockbroker who runs a securities firm – a securities firm that had been under regulatory scrutiny in the past year.  The description in the Registration Statement of the CFO did not disclose these pertinent facts – especially pertinent for a firm which held out as its mission "bringing transparency and corporate governance to China."

4.      Due to defendants' positive, but false statements, by May 15, 2007, the stock was trading around $12.00 per share.

5.      Then on May 21, 2007, *Barron's* issued an article, stating in part:

> Asian business media tapped Fredy Bush as the "entrepreneur of the year" last October for building her Xinhua Finance into a Chinese media and financial information powerhouse.

In just seven years, Xinhua has become a kind of McGraw-Hill of China – with financial news services, stock indexes and ratings agencies. Listed in Tokyo, Bush's company's raised $300 million in March in a U.S. offering on behalf of its Xinhua Finance Media unit (ticker: XFML). Xinhua Finance has collected some influential U.S. assets this year, including the hard-hitting proxy advisory firm Glass Lewis that's staffed with veterans of the Securities and Exchange Commission and the Wall Street Journal . . . or at least it was until last week.

That's when two of the most prestigious staffers at Glass Lewis resigned after apparently concluding that their new parent company, Xinhua Finance, would have flunked a Glass Lewis review of its corporate transparency. It turns out that Xinhua Finance Media's IPO prospectus failed to mention some awkward facts about the company's then-chief financial officer, Shelly Singhal.

The 39-year-old Singhal was simultaneously the company's CFO and an investment banker and stock broker who runs the Newport Beach, Calif., firm Bedrock Securities. And since April 2006, Singhal's firm has been under a cease-and-desist order from the National Association of Securities Dealers, as the regulators seek to suspend Bedrock for violating several SEC rules. I called Bedrock, but no one returned my message.

Singhal's name actually came up in Barron's May 7 issue ("New Controversy for iMergent"), where we reported that he was fighting a private civil racketeering suit in California courts for his investment activities. He got involved with Xinhua Finance as a major investor in 2003. He had previously been a major investor in a couple of companies called AremisSoft and ACLN – which turned out to be outrageous frauds.

By coincidence, perhaps, our mention of Singhal on May 7 was followed Tuesday by a Xinhua Finance Media an-nouncement that Singhal was moving from his role as chief financial officer of the U.S.-listed unit to become head of corporate development for the Cayman Island-based parent company's capital markets activities. Taking his place as CFO was David Wang, who had worked for Singhal's brokerage firm and investment bank.

Friday, Glass Lewis' head of research, Lynn E. Turner, resigned. Before joining Glass Lewis, Turner had been arguably the best accounting regulator to serve at the Securities and Exchange Commission. Wednesday, Glass Lewis' managing director and research editor, Jonathan Weil, resigned. He had come to the proxy advisory firm from the Wall Street Journal, where he was the first reporter to blow the whistle on Enron.

"I am uncomfortable with and deeply disturbed," Weil said in his resignation letter, "by the conduct, background and activities of our new parent company Xinhua Finance Ltd., its senior management, and its directors. To protect my reputation, I no longer can be associated with Glass Lewis or Xinhua Finance."

Shortly after I called Xinhua Finance Friday afternoon to ask about Singhal, the company put out a press release announcing that he was resigning from the boards of both Xinhua Finance and its Nasdaq-listed subsidiary, and also leaving his management positions. "It is a difficult decision to leave these two Companies that I have helped to grow," he said in the announcement, "but there are other priorities that will require my full attention, so it is clearly the right thing to do now."

A few moments later, I was on the phone with Xinhua Finance CEO Freddy Bush. She praised Singhal's skills at dealing with regulatory regimes in the U.S., Japan and China. "Shelly's got some very unique skills," she said.

I asked if she'd known about the NASD action against Singhal's brokerage firm when putting together a prospectus for Xinhua Finance Media that omitted that fact. After a long speech about how she had relied on the best advice of the company's underwriters and lawyers, she acknowledged that, "yes," she had known about the NASD problems of Singhal's brokerage firm. Her legal advisers told her, she said, that the prospectus didn't have to make that disclosure.

"Shelly continues to believe that these allegations are without merit," she continued. She also pointed out that Xinhua Finance has thousands of employees in more than a dozen countries. And even the proxy adviser Glass Lewis will survive the resignations of its marquee names, she asserted. "Glass Lewis has a very large group of incredibly talented people. Their product is world-class."

6.      On this news, Xinhua's stock price collapsed from $10.79 per share on May 17, 2007 to close at $8.76 per share on May 21, 2007, on unusually high volume. Previously, the Company's stock traded as high as $12.68 per share.

7.      The true facts which were omitted from the Registration Statement were as follows:

(a)      The Company's CFO was heavily involved with a brokerage firm with regulatory issues.

(b)      The Company's corporate governance was not of a standard where it could claim its mission was increased transparency.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§11 and 15 of the 1933 Act [15 U.S.C. §§77k and 77o].

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the 1933 Act.

10.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because the defendants maintain offices in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

11.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

12.      Plaintiff Brickman Investments Inc. acquired Xinhua ADSs pursuant or traceable to the IPO, as set forth in the accompanying certification, and has been damaged thereby.

13.      Defendant Xinhua is a diversified media company in China.  The Company has developed an integrated platform that includes the creation and production of content that is distributed across nationwide television and print media outlets and radio in Beijing and Shanghai. The Company's business operates across five groups: media production, broadcasting, print, advertising and research.

14.      Defendant Bush founded Xinhua in November 2005, and has served as CEO and Chairman of the Board of Directors of the Company since its inception.  Bush signed or authorized the signing of the false and misleading Registration Statement.

15.      Defendant Shelly Singhal ("Singhal") had served as CFO of Xinhua from September 2006 until his resignation from the Company on May 19, 2007.  Additionally, Singhal served as a director of Xinhua's parent company, Xinhua Finance Limited, from July 2004 until his resignation on May 19, 2007.  Singhal signed the false and misleading Registration Statement.

16.     The defendants referenced above in ¶¶14-15 are referred to herein as the "Individual Defendants."

17.     Defendant J.P. Morgan Securities Inc. ("J.P. Morgan") provides unlimited issuer, market and economic data focused on non-US equities.  J.P. Morgan acted as underwriter and financial advisor to Xinhua in connection with the IPO, helping to draft and disseminate the offering documents.

18.     Defendant UBS AG ("UBS") is global financial services firm offering wealth management, investment banking, asset management and business banking services to clients and that provides products and services to institutions, corporations, governments and high net-worth clients around the world, and acts as an underwriter in the sale of corporate securities.  UBS acted as underwriter and financial advisor to Xinhua in connection with the IPO, helping to draft and disseminate the offering documents.

19.     Defendant CIBC World Markets Corp. ("CIBC") is a full-service investment bank that provides equity research, institutional brokerage and investment banking to public and private growth companies and their investors.  CIBC acted as underwriter and financial advisor to Xinhua in connection with the IPO, helping to draft and disseminate the offering documents.

20.     Defendant WR Hambrecht + Co., LLC ("WR Hambrecht") is a full-service investment bank that provides equity research, institutional brokerage and investment banking to public and private growth companies and their investors.  WR Hambrecht acted as underwriter and financial advisor to Xinhua in connection with the IPO, helping to draft and disseminate the offering documents.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired

- 5 -

Xinhua ADSs traceable to the Company's false and misleading Registration Statement for its IPO and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

22.     The members of the Class are so numerous that joinder of all members is impracticable. Xinhua shares were actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Xinhua or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. Xinhua has more than 67.9 million shares outstanding.

23.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

24.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

25.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

        (a)     whether the 1933 Act was violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of Xinhua; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

26.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## BACKGROUND

27.     Xinhua is a diversified media company in China. The Company has developed an integrated platform that includes the creation and production of content that is distributed across nationwide television and print media outlets and radio in Beijing and Shanghai, and where advertising sales are supported by its own advertising agency. These outlets reach an estimated 210 million potential television viewers, a potential listening audience of 33 million people, and the readers of various magazines and newspapers. Xinhua generates revenue principally by selling advertising on broadcast and print distribution platforms; selling advertising space on newspaper and magazine pages; selling produced television programs; providing advertisement production services, and providing research services. The Company's business operates across five groups: media production, broadcasting, print, advertising and research.

28.     On August 9, 2006, Xinhua announced its investment of a 19.9% equity stake in Glass, Lewis & Co., LLC ("Glass Lewis"). As part of the announcement, Xinhua stated in the press release:

The investment further advances Xinhua Finance's mission of bringing transparency and corporate governance to China and of introducing essential products and services that facilitate investment in China. The investment from Xinhua Finance – and the ongoing business relationship – will enhance Glass Lewis' global presence, its capabilities in emerging markets and the firm's dedication to providing superior services to institutional investors globally.

*     *     *

"We see demand for the services Glass Lewis provides, as foreign investment in China's public companies is increasing dramatically through the Qualified Foreign Institutional Investor mandates. We expect we will also be able to facilitate Glass Lewis' expansion into the China market," said Fredy Bush, Chief Executive Officer of Xinhua Finance.

Bush added, "Global investors are adding Chinese companies to their portfolios. China's public companies have complicated shareholding structures – including State-owned shares, Legal Person shares and Free Float shares – which can make the voting process for a foreign investor very complicated. Providing global institutions with research and voting advice on Chinese public companies is a significant opportunity for Xinhua Finance and Glass Lewis. Once again, Xinhua Finance is taking first-mover advantage in a service sector that is increasingly important to large investors while bringing international standards to the China market."

29.     On March 8, 2007, Xinhua announced the offering of 23.07 million ADSs to be used to repay debt to its parent Xinhua Financial Network Limited and to make strategic acquisitions.

### THE FALSE AND DEFECTIVE REGISTRATION
### STATEMENT AND PROSPECTUS

30.     On or about February 21, 2007, Xinhua filed with the SEC a Form F-1 (the "IPO Registration Statement") for the IPO.

31.     On or about March 9, 2007, the Company filed its Prospectus for the IPO (the "IPO Prospectus"), which forms part of the IPO Registration Statement and which became effective on March 8, 2007, and completed its offering of 23.07 million ADSs, representing 46.15 million common shares, pursuant to the IPO Prospectus.

32.     The IPO Registration Statement and IPO Prospectus were negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to

- 8 -

make the statements made not misleading and were not prepared in accordance with the rules and

regulations governing their preparation.

33.    The IPO Registration Statement and IPO Prospectus represented the following about

Xinhua's business and operations:

> We are a leading diversified media company in China. We have assembled
> and built a group of media assets and strategic partnerships that we believe will
> enable us to achieve best in class media and advertising services across various
> sectors of the media business in China.

> We have developed a unique, integrated platform that includes the creation
> and production of high-quality content that is distributed across nationwide television
> and print media outlets and radio in Beijing and Shanghai, and where advertising
> sales are supported by our own advertising agency. These outlets reach an estimated
> 210 million potential television viewers, a potential listening audience of 33 million
> people, and readers of leading magazines and newspapers. In addition, our market
> research business enables our advertisers to analyze, understand and better reach
> their targeted consumers.

> Our content currently focuses on business and financial news as well as
> wealth management and affluent lifestyle programming. We focus on this
> programming because we believe it attracts the highest income audience in China.
> This audience is highly sought after by our target advertisers.

34.    Neither the IPO Registration Statement nor the IPO Prospectus disclosed that since

April 2006, defendant Shingal additionally acted as an investment banker and stockbroker at

Bedrock Securities ("Bedrock"). Both the IPO Registration Statement and IPO Prospectus were

prepared and filed after April 2006. Prior to the Company's IPO, Bedrock had been under a

National Association of Securities Dealers ("NASD") investigation for record-keeping violations in

April 2006. Furthermore, Bedrock had been under a NASDAQ "cease-and-desist" order for

violating SEC regulations.

35.    Once this information began to be disclosed, Xinhua's reputation began to soften.

36.     As a result of this news, on May 16, 2007, Jonathan Weil, a managing director and research editor with Glass Lewis, Xinhua's Proxy advisor, resigned.  Subsequently, on May 21, 2007, Lynn E. Turner, head of research for Glass Lewis, resigned.

37.     On May 19, 2007, the Company issued a press release, stating in part:

Xinhua Finance Ltd. and Xinhua Finance Media announced today that Mr. Shelly Singhal has resigned from the Boards of both companies, as well as from all executive and managerial positions. His departure is immediate.

"Mr. Singhal provided important assistance throughout the development of Xinhua Finance Ltd. and Xinhua Finance Media," commented Chairman and CEO Fredy Bush, "He remains a strong supporter of both companies, and he has our thanks for his tireless efforts in contributing to our successes to date."

"It is a difficult decision to leave these two companies that I have helped to grow. Unfortunately, recent allegations against me in the press concerning my activities prior to joining Xinhua Finance have created a situation where my continued involvement with Xinhua Finance has become a distraction to management, so it is clearly the right thing to do now," Mr. Singhal commented. "There is a deep pool of entrepreneurial and managerial talent in place to insure continued progress. I remain a loyal and long-term follower and shareholder, and wish the two companies well."

Mr. Singhal is currently the subject of a civil suit which is unrelated to Xinhua Finance. Mr. Singhal has advised that he believes this claim to be without merit and that he intends to dispute it vigorously.

Fredy Bush added, "We wish Shelly the best and are grateful to him for his efforts on behalf of Xinhua Finance. During his time with Xinhua Finance, we believe Shelly has conducted himself with integrity and professionalism. In the meantime, we look forward to putting this matter behind us and focusing on what we do best – continuing to build our business in China and creating value for our shareholders".

38.     Then, the May 21, 2007 edition of *Barron's* included an article entitled "Ignoring an Inconvenient Truth," which stated in part:

Asian business media tapped Fredy Bush as the "entrepreneur of the year" last October for building her Xinhua into a Chinese media and financial information powerhouse.

In just seven years, Xinhua has become a kind of McGraw-Hill of China – with financial news services, stock indexes and ratings agencies. Listed in Tokyo,

- 10 -

Bush's company's raised $300 million in March in a U.S. offering on behalf of its Xinhua Finance Media unit (ticker: XFML). Xinhua Finance has collected some influential U.S. assets this year, including the hard-hitting proxy advisory firm Glass Lewis that's staffed with veterans of the Securities and Exchange Commission and the Wall Street Journal . . . or at least it was until last week.

That's when two of the most prestigious staffers at Glass Lewis resigned after apparently concluding that their new parent company, Xinhua Finance, would have flunked a Glass Lewis review of its corporate transparency. It turns out that Xinhua Finance Media's IPO prospectus failed to mention some awkward facts about the company's then-chief financial officer, Shelly Singhal.

The 39-year-old Singhal was simultaneously the company's CFO and an investment banker and stock broker who runs the Newport Beach, Calif., firm Bedrock Securities. And since April 2006, Singhal's firm has been under a cease-and-desist order from the National Association of Securities Dealers, as the regulators seek to suspend Bedrock for violating several SEC rules. I called Bedrock, but no one returned my message.

Singhal's name actually came up in Barron's May 7 issue ("New Controversy for iMergent"), where we reported that he was fighting a private civil racketeering suit in California courts for his investment activities. He got involved with Xinhua Finance as a major investor in 2003. He had previously been a major investor in a couple of companies called AremisSoft and ACLN – which turned out to be outrageous frauds.

By coincidence, perhaps, our mention of Singhal on May 7 was followed Tuesday by a Xinhua Finance Media announcement that Singhal was moving from his role as chief financial officer of the U.S.-listed unit to become head of corporate development for the Cayman Island-based parent company's capital markets activities. Taking his place as CFO was David Wang, who had worked for Singhal's brokerage firm and investment bank.

Friday, Glass Lewis' head of research, Lynn E. Turner, resigned. Before joining Glass Lewis, Turner had been arguably the best accounting regulator to serve at the Securities and Exchange Commission. Wednesday, Glass Lewis' managing director and research editor, Jonathan Weil, resigned. He had come to the proxy advisory firm from the Wall Street Journal, where he was the first reporter to blow the whistle on Enron.

"I am uncomfortable with and deeply disturbed," Weil said in his resignation letter, "by the conduct, background and activities of our new parent company Xinhua Finance Ltd., its senior management, and its directors. To protect my reputation, I no longer can be associated with Glass Lewis or Xinhua Finance."

Shortly after I called Xinhua Finance Friday afternoon to ask about Singhal, the company put out a press release announcing that he was resigning from the

boards of both Xinhua Finance and its Nasdaq-listed subsidiary, and also leaving his management positions. "It is a difficult decision to leave these two Companies that I have helped to grow," he said in the announcement, "but there are other priorities that will require my full attention, so it is clearly the right thing to do now."

A few moments later, I was on the phone with Xinhua Finance CEO Freddy Bush. She praised Singhal's skills at dealing with regulatory regimes in the U.S., Japan and China. "Shelly's got some very unique skills," she said.

I asked if she'd known about the NASD action against Singhal's brokerage firm when putting together a prospectus for Xinhua Finance Media that omitted that fact. After a long speech about how she had relied on the best advice of the company's underwriters and lawyers, she acknowledged that, "yes," she had known about the NASD problems of Singhal's brokerage firm. Her legal advisers told her, she said, that the prospectus didn't have to make that disclosure.

"Shelly continues to believe that these allegations are without merit," she continued. She also pointed out that Xinhua Finance has thousands of employees in more than a dozen countries. And even the proxy adviser Glass Lewis will survive the resignations of its marquee names, she asserted. "Glass Lewis has a very large group of incredibly talented people. Their product is world-class."

39.     With this development, the Company's shares fell 27% to a low of $8.31 per share on May 21, 2007.

40.     The true facts which were omitted from the Registration Statement were as follows:

(a)     The Company's CFO was heavily involved with a brokerage firm with regulatory issues.

(b)     The Company's corporate governance was not of a standard where it could claim its mission was increased transparency.

## COUNT I

### Violations of Section 11 of the 1933 Act
### Against All Defendants

41.     Plaintiff repeats and realleges each and every allegation contained above.

42.     This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

43.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

44.     Xinhua is the registrant for the IPO.  The defendants named herein were responsible for the contents and dissemination of the Registration Statement.

45.     As issuer of the shares, Xinhua is strictly liable to plaintiff and the Class for the misstatements and omissions.

46.     None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

47.     By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

48.     Plaintiff acquired Xinhua shares pursuant to the Registration Statement for the IPO.

49.     Plaintiff and the Class have sustained damages.  The value of Xinhua shares has declined substantially subsequent to and due to defendants' violations.

50.     At the time of their purchases of Xinhua shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to May 2007.  Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint.  Less than 12 months elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### Violations of Section 15 of the 1933 Act
### Against the Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained above.

52.     This Count is brought pursuant to §15 of the 1933 Act against the Individual Defendants.

53.     Each of the Individual Defendants was a control person of Xinhua by virtue of his or her position as a director and/or senior officer of Xinhua.  The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Xinhua.

54.     Each of the Individual Defendants was a culpable participant in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure;

B.     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.     Awarding rescission or a rescissory measure of damages; and

E.      Such equitable/injunctive or other relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury

DATED:  June 1, 2007                    LERACH COUGHLIN STOIA GELLER
                                          RUDMAN & ROBBINS LLP
                                        SAMUEL H. RUDMAN (SR-7957)
                                        DAVID A. ROSENFELD (DR-7564)


                                                        /s
                                        SAMUEL H. RUDMAN

                                        58 South Service Road, Suite 200
                                        Melville, NY  11747
                                        Telephone:  631/367-7100
                                        631/367-1173 (fax)
                                        LERACH COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
                                        DARREN J. ROBBINS
                                        DAVID C. WALTON
                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101-3301
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)

                                        ABRAHAM FRUCHTER & TWERSKY LLP
                                        JACK G. FRUCHTER
                                        One Pennsylvania Plaza, Suite 2805
                                        New York, NY  10119
                                        Telephone:  212/279-5050
                                        212/279-3655 (fax)

                                        Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Xinhua Finance Media.doc

CERTIFICATION OF BRICKMAN INVESTMENTS INC.
IN SUPPORT OF CLASS ACTION COMPLAINT

Brickman Investments Inc. ("plaintiff") declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint prepared by counsel in the above-captioned case and has authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. During the proposed Class Period, plaintiff executed the following transactions in the stock of Xinhua Finance Media Ltd. See Attachment A:

5. In the past three years, plaintiff has sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws entitled *Brickman Investments Inc. v. Allot Communications Ltd. et al*, 07-cv-3455 (S.D.N.Y. 2007).

6. Plaintiff will not accept payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this June 1
day of, 2007.

BRICKMAN INVESTMENTS INC.

ATTACHMENT A

| Date | Action | Amount | Price |
|------|--------|--------|-------|
| March 9, 2007 | Buy | 600 shares | $13.00 |
| March 15, 2007 | Sell | 600 shares | $10.30 |